UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TONY D. WALKER,

        Plaintiff,

    v.                                                  Case No. 11-CV-995

GARY HAMBLIN, JAMES R. SCHWOCHERT,
RICHARD W. PHILLIPS, RICK A. RASMUSSEN,
MARC W. CLEMENTS, KAREN LARSEN,
and JOANNE BOVEE,

        Defendants.

## ORDER

    Plaintiff, Tony D. Walker, a Wisconsin state prisoner, filed this pro se civil rights action under 42 U.S.C. § 1983 and was granted leave to proceed in forma pauperis. He claims that defendants retaliated against him for filing prison grievances by issuing him a conduct report. Plaintiff has filed a motion for summary judgment and defendants have filed a motion for summary judgment. These motions are ready for resolution and will be addressed herein.

### I. SUMMARY JUDGMENT STANDARD

    "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248.

A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. FACTUAL BACKGROUND

### A. Parties

Plaintiff was housed in segregation at Dodge Correctional Institution (DCI) at all times relevant. Defendants are: Warden James Schwochert; Security Director Richard Phillips; Marc Clements, Deputy Warden at all times relevant; Joanne Bovee, Inmate Complaint Examiner; Lieutenant Richard Rasmussen; and Captain Karen Larsen.

Plaintiff claims that on December 30, 2010, defendant Phillips wrote him Conduct Report (CR) 2029968 in retaliation for plaintiff exercising his First Amendment right to complain to prison officials. Defendants maintain that plaintiff received the conduct report for violating prison rules by submitting letters to Phillips and the Warden's Office on legal

2

loan paper after he had been warned not to use such paper for non-legal purposes. CR 2029968 alleged that plaintiff violated Wisconsin Department of Corrections (DOC) rules against disobeying orders, disrespect, threats, and misuse of state or federal property.

**B. Relevant Facts**

DCI provides Interview/Information Request forms to inmates so they can communicate with staff regarding questions, concerns, or needed information. The forms are readily available to inmates at no cost and there is no cost to send them to staff. Pen inserts are available to inmates in segregation at no cost. DCI also provides to inmates at no cost Offender Complaint forms, disbursement requests, Request for Corrections Complaint Examiner Review forms, and Request for Review of Rejected Complaint forms. Inmates may request supplies, which include but are not limited to Interview/Information Request forms, inmate complaint forms, disbursement requests, complaint appeal forms, and Request for Review of Rejected Complaint forms from staff when they pick up evening meal trays. Supplies are passed out daily. Segregation Unit staff pick up Interview/Information Requests daily.

According to DOC policy, legal loans are available to indigent inmates so they have the paper, pens, photocopies, and postage to correspond with courts, attorneys, parties in litigation, the inmate complaint review system ("ICRS"), or the parole board. See Wis. Admin. Code § DOC 309.51(1). The policy behind legal loans is to allow inmates access to the courts for litigation related to their own cases. (Division of Adult Institutions Policy and Procedure 309.51.01.) Legal loan applications will be denied if "[t]he loan request is not for an appropriate purpose under DOC 309.51." (Phillips Aff. ¶ 15; Ex. 1000, III. Loan Approval and Denial, A. 2, p. 2; Clements Aff. ¶ 16.) "Any inmate using legal loan supplies

3

for purposes other than legal activities or giving these supplies to another inmate may be subject to disciplinary action." (Phillips Aff. ¶ 16; Ex. 1000, I. Facility Procedure F, p. 5; Clements Aff. ¶ 17.) Indigent inmates do not have unlimited access to legal loans. The DOC must balance an inmate's right to use the mail with budgetary considerations. Inmates who receive legal loans are told they must prioritize their litigation needs to ensure they have the resources available to meet all court imposed or statutory deadlines.

Defendant Schwochert receives correspondence from approximately 50 inmates per week. He refers some of these correspondences to other staff members either because that staff member is the appropriate person to address the issue raised or because he does not have time to respond to all of them. Some referrals are sent to staff via interdepartmental mail with a note or short message on how it is to be handled. In addition, Schwochert meets with the deputy warden and security director almost daily, so letters referred to them are simply handed to them with a verbal request. In Schwochert's absence, correspondence from inmates sent to the Warden's Office is reviewed according to the chain of command.

On December 7, 2010, plaintiff was issued CR 1879205 charging him with violating Wis. Admin. Code §§ DOC 303.22, lying; 303.34, theft; 303.40, unauthorized transfer of property; and 303.47, possession of contraband. The conduct report alleged that plaintiff printed legal cases from the law library without paying for them, borrowed law library supplies without permission, and lied to staff about these activities. On December 9, 2010, the Warden's Office received an Interview/Information Request from plaintiff complaining about being placed in TLU. Defendant Schwochert responded to plaintiff's Interview/Information Request on the same day and explained:

4

> Temporary lock-up (TLU) is a non-punitive status. Per DOC 303.11 (3), your status is reviewed every seven days by the Security Director to determine whether TLU continues to be appropriate.
>
> DCI procedure allows for medical or mental health staff to interact with inmates in segregation at their cell front several times per week. At this time you are provided the opportunity to communicate medical, dental or mental health needs to the health provider. This procedure is compliance [sic] with WI State Statutes.

(Schwochert Aff. ¶ 6, Ex. 1001.)

The Warden's Office received two Interview/Information Request from plaintiff on December 13, 2010. The first one stated that defendant Phillips was biased for making a determination to place plaintiff in TLU. Defendant Schwochert responded to plaintiff on the same day, and advised that plaintiff would have an opportunity to give testimony at his due process hearing. (Schwochert Aff. ¶ 8, Ex. 1002.) Plaintiff's second Interview/Information Request acknowledged the December 9, 2010 response from Schwochert to plaintiff's Interview/Information Request of the same date. Schwochert did not feel a response was necessary.

Also on December 13, 2010, plaintiff had a disciplinary hearing with respect to CR 1879205, where he was found guilty of violating Wis. Admin. Code §§ 303.27, lying; 303.34, theft; and 303.47, possession of contraband. He was given a disposition of 120 days disciplinary separation and restitution for 72 pages of wrongfully obtained photo copies.[1]

---

[1] On December 15, 2010, plaintiff submitted an appeal of CR1879205 on multiple "Appeal of Adjustment Committee or Hearing Officer's Decision" forms. (Bresette Aff. ¶ 2, Ex. 1009.) On January 31, Clements modified the hearing officer's decision on CR #1879205 in part by dismissing the violation of Wis. Admin. Code § DOC 303.47 as a lesser included offense of § DOC 303.34. He also modified the disposition to 90 days disciplinary separation and restitution of $10.80.

5

On December 16, 2010, the ICE's office received two offender complaints from plaintiff concerning the conditions in segregation. That same day, defendant Bovee returned plaintiff's offender complaints to him with the following comment: "Before this complaint is accepted, you need to attempt to resolve the issue by contacting Cpt. R. Menne (DOC 310.09(4))." (Bovee Aff. ¶ 5, Ex. 1011.)

Captain Menne is the Segregation Captain at DCI. Inmates may be directed to attempt to resolve the issue in their grievance prior to the acceptance of the complaint pursuant to § DOC 310.09(4), Wis. Admin. Code. Bovee's December 16, 2010 letter directed plaintiff to contact Captain Menne to try to resolve his complaints about segregation because he is the Segregation Unit Supervisor and therefore the appropriate person to contact regarding segregation issues under the Inmate Resource Guide.[2]

On December 16, 2010, the Warden's Office received an Interview/Information Request from plaintiff complaining about the disciplinary hearing for CR 1879205 and conditions in segregation. The Warden's Office forwarded the correspondence to defendant Phillips for a response and the next day he responded as follows:

> Your recent correspondence to Warden Schwochert has been forwarded to me for response and as such, I'm answering on his behalf.

---

[2] The DCI General Population Handbook ("DCI Handbook") is distributed to all general population inmates at DCI. It directs inmates to refer to the Institution Resource Guide for information on the proper staff routing of issues when attempting to resolve an issue prior to filing an offender complaint. The Institution Resource Guide, which is available in the library and all housing units, provides a chart that directs inmates to contact particular staff members to attempt to resolve specific issues. The chart provides two levels of staff members for each issue. Inmates are directed to first contact the staff member listed in the First Level to attempt to resolve the issue. If that staff member does not respond within a reasonable amount of time, the inmate is directed to contact the staff member listed in the Second Level. The Inmate Resource Guide directs inmates with issues related to segregation to first contact a segregation unit sergeant or correctional office. The Second Level contact for segregation issues is the Segregation Captain/Program Captain.

6

> It is my understanding that your disciplinary hearing for Conduct Report #1879205 was held 12/14/2010, a disposition of which you received Restitution $10.80; Refer to PRC; and 120 days D-Sep. I would also encourage you to abide by institution rules, as privileges are based on behavioral adjustment, while in this status.
>
> Your recommendations as to the procedures you would like to see implanted with respect to the Law Library, as well as additional furniture be provided in the coming year have been noted.
>
> I trust this has answered your correspondence.

(Phillips Aff., ¶ 19, Ex. 1004.) Phillips' response incorrectly states that the hearing was held as scheduled on December 14, 2010, when it was actually held on December 13, 2010. Id.

On December 20, 2010, the Warden's Office received a letter from plaintiff written on legal loan paper dated December 19, 2010 and titled "Security Director's Response and Unfair Treatment in Disciplinary Process." He complained that Phillips' December 17, 2010 correspondence did not address his concerns and his unfair treatment by the hearing officer for CR 1879205. (Phillips Aff. ¶¶ 21, 23, Ex. 1005; Schwochert Aff. ¶ 9.) The Warden's Office referred the correspondence to Phillips for a response. Also on December 20, 2010, Phillips received a letter from plaintiff written on legal loan paper dated December 19, 2010 and titled "December 17, 2010 Correspondence." This letter complained that Phillips' December 17, 2010 correspondence did not address his complaints and again complained about the conditions in segregation and handling of the disciplinary hearing for CR 1879205. (Phillips Aff. ¶¶ 20, 23, Ex. 1005.)

On December 27, 2010, Phillips responded to both letters. He stated:

> I am in receipt of your letter, dated December 19, 2010. A letter from you to Warden Schwochert has been forwarded to my office for a response, and therefore, I will be answering on his behalf.

7

> You make comparisons of the Seg building in Green Bay Correctional Institution/Waupun Correctional Institution, which are features specific to their facility and therefore, I will not comment on those facilities and the structure thereof. Questions and/or concerns regarding the Step Program can be addressed with Capt. Menne during the daily rounds.
>
> Regarding your disciplinary hearing of December 14, 2010 (Conduct Report #1879205), served on December 7, 2010, your Advocate was prepared for the hearing and as such it was rescheduled earlier and held within the timeframe, in accordance with DOC 303.76.
>
> Lastly, you are currently being supplied paper and postage via means of the Legal Loan system, which affords you the ability to ensure you are able to correspond on a legal level. I do note, however, that in corresponding with me, (with a duplicate copy of that letter to Warden Schwochert, in spite of your removing the bottom part of the ruled paper), you used paper provided to you through a legal loan. It is inappropriate for you to use legal supplies to correspond with us. Inappropriate use of legal supplies could negatively impact your eligibility for legal supplies and result in the issuance of a Conduct Report for Disobeying Orders and for violation of institutional Policy and Procedure 111.6, Legal Supplies – Indigent Inmates.[3]
>
> I trust this addresses your concerns.

(Phillips Aff. ¶ 23, Ex. 1005.)

On December 27, 2010, the Warden's Office received a letter from plaintiff dated December 25, 2010, titled "Supplemental Appeal for C.R. #1879205." In the letter, plaintiff discusses additional information and arguments for the appeal to the warden he had already filed for CR 1879205. This letter was written on paper provided to plaintiff through a legal loan. Schwochert referred the letter to defendant Clements, who responded to plaintiff's correspondence that same day as follows:

---

[3] Policy and Procedure 111.6 was replaced by DAI Policy and Procedure 309.51.01 on February 5, 2007. Phillips's citation to Policy and Procedure 111.6 in the letter was outdated and should have instead cited 309.51.01. (Phillips Aff. ¶ 23, n.1.)

8

> Your appeal is being processed and you will be notified when a decision has been made. No supplemental information will be accepted after the conduct report appeal has been submitted. I am returning your additional sheets of information.
>
> It is noted that in corresponding with me, you used paper provided to you through a legal loan. It is inappropriate to use legal supplies to correspond with the Warden. Inappropriate use of legal supplies could negatively impact your eligibility for legal supplies and result in the issuance of a conduct report for disobeying orders and for violation of DAI Policy 309.51.01 – Legal Loans.

(Phillips Aff. ¶ 24; Schwochert Aff. ¶ 9; Clements Aff. ¶ 20, Ex. 1006.)

On December 29, 2010, the Warden's Office received a letter from plaintiff written on legal loan paper, dated December 28, 2010 and titled "Return of Supplemental Appeal and Its Resubmission, and Threats of Retaliation from You and the Security Director." The letter stated that plaintiff was resubmitting his "supplemental appeal." Plaintiff further stated:

> Next, you and the Security Director have threatened disciplinary action in retaliation for my using paper from the legal loan supplies to submit my appeals and complaints to you all regarding this institution and other legal issues. Go ahead, I'm not about to stop, and as a matter of fact I'm leaving my number at the bottom of the pages from now on. My appeal to you and complaints to you and the Security Director are a part of my first amendment rights to seek redress of my grievances and of access to the courts.

(Phillips Aff. ¶¶ 25, 29, Ex. 1007; Schwochert Aff. ¶ 9.) The correspondence was forwarded to Phillips for a response.

On December 30, 2010, Phillips received a letter from plaintiff written on legal loan paper, dated December 29, 2010 and titled "December 27, 2010 Correspondence and Unconstitutional Threats of Retaliation." Following the receipt of this letter, Phillips wrote plaintiff CR 2029968 charging him with violating Wis. Admin. Code §§ DOC 303.24,

9

disobeying orders; 303.16, threats; 303.36, misuse of state and federal property; and 303.25, disrespect. Phillips wrote the following in the conduct report:

> On December 30, 2010, I (R. Phillips, Security, DCI) was reviewing my daily correspondence. I received a letter, authored by inmate Tony Walker, #167841. The letter was sent via institutional mail. It was composed on paper sent to him by the Business Office, via means of the Legal Loan process, and as such, the lined paper was stamped "legal loan 167841" on every sheet of paper. The policy states, "Any inmate using legal loan supplies for purposes other than legal activities or giving these supplies to another inmate may be subjected to disciplinary action". Writing to me or the Warden does not constitute legal activities. Inmate Walker received a warning for the same use from my office on December 27, 2010. On the very same day, he responded to my Memo, using legal loan paper, stating, in part, "Lastly, surely you really didn't think your and the wardens choreographed responses containing threats of disciplinary action for my use of the legal loan supplies to send your complaints, would carry any weight did you?" Having written this, it is clear that inmate Walker understood the expectations that were given to him in regard to the proper use of the legal loan supplies (paper). The institution supplies complaint forms as an avenue for filing inmate complaints.
>
> In this personal letter, inmate Walker also complains about how his Conduct Report was handled. There is also an appeal process for those not satisfied with the Conduct Report decision. Upon further investigation, I found that he had, indeed, filed an appeal of the disciplinary hearing decision.
>
> Because inmate Walker would not wait for the results of his Conduct Report appeal, it does not warrant the use of the legal loan matters as this is not viewed as being a legal letter.
>
> In the last paragraph of inmate Walker's letter, he states, "you don't scare me and your threats sound like the cowardly lion in the Wizard of Oz 'put em up, put em up' yet at the same time you're looking in all directions for a place to run and hide. The solution is simple, reverse this garbage and leave me alone and I'll return the favor, if not, lets go." By inmate Walker making this statement, he appears to be trying to intimidate staff by using threats, from enforcing the rules to circumvent the system and being allowed to continue violating the rules. Inmate Walker did, in fact, sign the letter to verify that he is the author of the same. A copy of the letter is attached to this Conduct Report. –END OF CONDUCT REPORT –

(Phillips Aff. ¶ 28; Bresette Aff. ¶ 3, Ex. 1010.)

10

On December 30, 2010, Phillips also sent plaintiff a correspondence responding to plaintiff's letters to Warden Schwochert and himself, stating:

> I am in receipt of your letter, dated December 27, 2010, as well as a letter intended for Warden Schwochert, dated December 28, 2010. I am addressing both letters in this correspondence.
>
> My response of December 27, 2010 was an effort to explain the mechanics of the legal loan process. The Business Office reserves the right to limit supplies based on misuse by an inmate; as referenced in DAI Policy 309.51.01, Legal Loans.
>
> You were referred to Programs Captain Menne because he is the area supervisor for your current housing unit. Therefore, Captain Menne is your first point of contact concerning questions or concerns you may have regarding your current assignment.
>
> I am aware you have submitted an appeal of the Adjustment Committee's decision. Therefore pending completion of the Deputy Warden's review of your appeal, no further response regarding the conduct report will be forthcoming from my office.

(Phillips Aff. ¶ 29, Exhibit 1007.)

On January 3, 2011, defendant Larsen reviewed CR 2029968 and determined that it would proceed as a major offense. (Bresette Aff. ¶ 3, Ex. 1010.)

On January 4, 2011, the Warden's Office received a letter from plaintiff dated January 3, 2011, and titled "Retaliatory Conduct Report From Security Director." This letter was written on paper provided to plaintiff through legal loan supplies. The Warden forwarded the letter to defendant Clements for handling, and he determined that no response was needed. Clements forwarded a copy of this letter to defendant Phillips with the handwritten note "more legal loan supplies used by inmate Tony Walker." (Schwochert Aff. ¶ 9; Clements Aff. ¶ 22, Ex. 1008.)

11

On January 11, 2011, defendant Rasmussen served as the hearing officer at the disciplinary hearing for CR 2029968. Based on the evidence presented at the hearing, Rasmussen concluded that the body of the report and plaintiff's statement supported a finding of guilt on §§ DOC 303.24 (Disobeying Orders) and 303.25 (Disrespect), based on plaintiff's handwritten note. (Rasmussen Aff. ¶ 13; Bresette Aff. ¶ 3, Ex. 1010.) Rasmussen did not feel the body of the report supported a finding of guilt on § DOC 303.16 (Threats) since there was no direct threat of physical harm in the body of the letters or conduct report, or § DOC 303.36 (Misuse of State or Federal Property) since the paper was the subject of a legal loan that would be paid for by the inmate if and when he had money in his account. Rasmussen gave plaintiff 60 days in disciplinary separation as a disposition for violating §§ DOC 303.24 and 303.25 because plaintiff engaged in the misconduct immediately after being ordered not to, he was aware he was committing the offense, and had a poor attitude towards the offense.

On January 13, 2011, plaintiff appealed Rasmussen's decision on CR 2029968. Defendant Clements was designated to respond to plaintiff's Appeal of the Adjustment Committee or Hearing Officer's Decision for Conduct Report #2029968 as the Warden's Designee. On February 21, 2011, he affirmed the hearing officer's decision noting:

> Conduct Report issued and processed appropriately. Hearing was conducted and documentation in accordance with DOC 303. That documentation supports the finding of guilt for 303.24 and 303.25. Inmate needs to use other means, for example, interview request slips for inter-institutional correspondence. Disposition is an appropriate sanction given prior warning and inmate's attitude toward the offense.

(Clements Aff. ¶ 23; Bresette Aff. ¶ 3, Ex. 1010.)

On January 5, 2011, the ICE's Office acknowledged Offender Complaint DCI-2011-292 in which plaintiff alleged that on December 30, 2010, he received CR 2029968 from Phillips for writing him a complaint about the Warden on paper provided to him through a legal loan. (Bovee Aff. ¶ 16, Exhibit 1014.) Defendant Bovee rejected the complaint on January 12, 2011, on the grounds that it was outside the scope of the ICRS. Bovee commented:

> jmb – The complainant states a conduct report has been written, and is complaining of matters involved with the alleged incident. The complainant is challenging the factual basis of the conduct report or describing mitigating factors to explain the complainant's actions and behavior. Those matters are considered during summary disposition or by a hearing officer/committee acting as an independent fact-finding body, and its judgment must be accepted. Once a conduct report is issued, the disciplinary process is initiated, and complaints of this nature are outside the scope of the inmate complaint review system as noted under DOC 310.08 (2)(a), Wis. Admin. Code.

(Bovee Aff. ¶ 17, Ex. 1014.) On January 25, 2011, defendant Schwochert received an appeal from plaintiff on the rejection of DCI-2011-292. Schwochert reviewed plaintiff's appeal and found that DCI-2011-292 was appropriately rejected pursuant to Wis. Admin. Code § DOC 310.11(5).

### III. ANALYSIS

Defendants contend that they should be granted summary judgment on plaintiff's retaliation claim. According to defendants, plaintiff's correspondences to DCI staff that resulted in CR 2029968 were inconsistent with penological interests because, (1) plaintiff does not have a constitutional right to use legal loan paper to correspond with staff, (2) his correspondences to Schwochert and Phillips were not ICRS grievances, and (3) the correspondence that resulted in plaintiff receiving CR 2029968 did not invoke a First

13

Amendment right because it was disrespectful and disobeyed orders. Defendants also contend that plaintiff invoking a constitutional right did not cause staff to issue him CR 2029968 and that he would have received the conduct report regardless of engaging in any protected activity.

Plaintiff contends that he has a established a retaliation claim because, (1) when submitting his grievances to defendants, he was engaging in First Amendment activity; (2) he suffered a retaliatory action - a conduct report and resulting 60 day segregation sentence - that deterred him from engaging in First Amendment activity; and (3) his informal grievances regarding rule violations, statutory violations, and conditions of confinement were the motivating factor in defendants' decision to retaliate against him. According to plaintiff, he has a constitutional right to use any kind of paper to submit his grievances to prison officials, grievances to Schwochert and responses to Phillips are genuine complaints and thus protected under the First Amendment, and the grievance/response that defendants used to issue CR 2029968 is protected under the First Amendment, was not disrespectful, and was not submitted in violation of a lawful order.

To establish a prima facie case of retaliation, an inmate must produce evidence that (1) he engaged in constitutionally protected speech, (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor in the defendants' actions. See Kidwell v. Eisenhauer, 679 F.3d 957, 965 (7th Cir. 2012) (clarifying allocation of evidentiary burdens at summary judgment in light of Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009)); Greene v. Doruff, 660 F.3d 975, 977 (7th Cir. 2011) (same). If the inmate satisfies these elements, the burden shifts to the defendants to rebut the causal inference with evidence showing that they would have taken the same action

14

even without any retaliatory motive. See Kidwell, 679 F.3d at 965; Greene, 660 F.3d at 979. Grieving about prison conditions is protected First Amendment activity. Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012). Defendants are not liable, however, if they would have issued plaintiff a conduct report no matter what. See Kidwell, 679 F.3d at 967; Mays v. Springborn, 575 F.3d 643, 650 (7th Cir.2009).

Here, it is undisputed that on December 20, 2010, the Warden's Office and defendant Phillips received letters from plaintiff written on legal loan paper. On December 27, 2010, Phillips responded to both letters. He provided plaintiff information regarding his concerns about segregation and his disciplinary segregation, and also advised that plaintiff should not have used legal loan paper to correspond with them. Phillips warned plaintiff that inappropriate use of legal supplies could result in a conduct report for violating institution policies and procedures.

The Warden's Office received another letter from plaintiff on legal loan paper on December 27, 2010, in which he discussed additional information and arguments for his appeal of CR 1879205. Defendant Clements responded and advised that plaintiff should not have used the legal loan paper to correspond with the Warden, and that inappropriate use of legal supplies could negatively impact his eligibility for legal supplies and result in the issuance of a conduct report for disobeying orders.

After plaintiff submitted the three letters on legal loan paper and received two responses warning him that further use of legal loan paper to correspond with the Warden's Office and defendant Phillips could result in a conduct report, plaintiff submitted two more letters on legal loan paper – one to the Warden's Office and one to defendant

15

Phillips. After receiving the letter on December 30, 2010, Phillips issued plaintiff CR 2029968.

Plaintiff contends that CR 2029968 was invalid because he was attempting to have his complaint informally resolved under the ICRS and therefore should have been permitted to use legal loan paper. This argument fails for several reasons. First, plaintiff's letter does not state that it is an attempt to resolve an issue prior to filing an ICRS complaint. Moreover, even if his letter was an attempt to informally resolve an ICRS complaint, the rules and policies of the DOC prevent inmates from using legal loan subsidies to correspond with staff at the institution. Wis. Admin. Code § DOC 309.51 defines the permissible uses of legal loans when it states "[c]orrespondence to courts, attorneys, parties in litigation, the inmate complaint review system under ch. DOC 310 or the parole board may not be denied due to lack of funds, except as limited in this subsection." DAI Policy and Procedure 309.51.01 further expresses the limited uses of legal loan subsidies. This policy states that the purpose of legal loans is to allow "inmates access to the courts for litigation related to their own cases." The policy goes on to state that legal loan applications will be denied if "[t]he loan request is not for an appropriate purpose under DOC 309.51" and that inmates will be subject to discipline for using legal loans for purposes other than legal activities. Here, plaintiff had a cost-free means to communicate with institution staff. Interview/Information Requests forms were available and plaintiff had previously used them while in segregation.

CR 2029968 charged plaintiff with threats, disrespect, disobeying orders, and misuse of state or federal property, based on plaintiff's letter dated December 29, 2010, and titled "December 27, 2010 Correspondence and Unconstitutional Threats of

16

Case 2:11-cv-00995-LA   Filed 03/14/13   Page 16 of 17   Document 75

Retaliation." At his disciplinary hearing, plaintiff was found not guilty of the threats and misuse of property charges. However, based on the above discussion, plaintiff disobeyed orders by submitting the letter on legal loan paper. He was also found guilty of the disrespect charge, and this charge was supported by the letter comparing defendant Phillip's statements to the cowardly lion in the Wizard of Oz. Based on the foregoing, a reasonable factfinder could not conclude that defendants retaliated against plaintiff. See Kidwell, 679 F.3d at 967.

**IT IS THEREFORE ORDERED** that plaintiff's motion for summary judgment (Docket #39) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket #42) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for extension of time to submit reply brief (Docket #59) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for extension of time (Docket #60) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing plaintiff's claims and this action.

Dated at Milwaukee, Wisconsin, this 14th day of March, 2013.

s/ Lynn Adelman

LYNN ADELMAN
District Judge